Eastern District of Kentucky
FILED

APR 14 2025

AT ASHLAND
Robert R. Carr
CLERK U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## ASHLAND

CRIMINAL ACTION NO.

UNITED STATES OF AMERICA            PLAINTIFF

V.            **PLEA AGREEMENT**

MATTHEW TYLER LEWIS            DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant, Matthew Tyler Lewis, will enter a guilty plea to Count 1 of the Information, charging a violation of 21 U.S.C. § 331(c), receiving a misbranded drug in interstate commerce and offering it for sale with the intent to defraud or mislead.

2. Pursuant to Rule 11(c)(1)(A), the United States will not bring additional charges against the Defendant based upon evidence in its possession at the time of the execution of this Agreement and arising out of the Defendant's conduct within the Eastern District of Kentucky, unless the Defendant breaches this Agreement.

3. The essential elements of Count 1 are:

(a) The defendant received in interstate commerce a misbranded drug;

(b) The defendant offered that drug for sale for pay or otherwise; and

(c) The defendant had the intent to defraud and mislead.

4. As to Count 1, the United States could prove the following facts that establish

1

the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) The Defendant was a licensed physician in the Commonwealth of Kentucky and the owner and operator of Lewis Family Care, a medical practice located in Ashland, Kentucky.

(b) Between May 2023 to November 26, 2023, the Defendant purchased semaglutide from Swole as Fuck Research (SAF Research), which later changed its name to Research Chemical Supply Research (RCS Research), in California. SAF Research and RCS Research were not registered with the Food and Drug Administration (FDA) as drug manufacturers or outsourcing facilities of compounded drugs, were not authorized to distribute semaglutide as an investigational new drug for human use, and were not a licensed pharmacy or a licensed prescription drug wholesaler. None of the semaglutide the Defendant purchased from these entities was approved by the FDA.

(c) In November 2023, the Defendant began ordering from Stone Mountain Research, located in Georgia, because he could obtain semaglutide for one-fourth of the cost he was paying RCS Research. Stone Mountain Research was not registered with the FDA as a drug manufacturer or outsourcing facility for compounded drugs, was not authorized to distribute semaglutide as an investigational new drug for human use, and was not a licensed pharmacy or a licensed prescription drug wholesaler. None of the semaglutide the Defendant purchased from this entity was approved by the FDA.

(d) The Defendant took measures to disguise and mislead others as to the sources of this semaglutide. For example, consistent with instructions he received from the supplier, the Defendant purchased the semaglutide using a Venmo account, Afterpay, or via phone. On his payments to SAF Research/RCS Research via Venmo, he described the orders as "Meal Prep" followed by the order number.

(e) The non-FDA approved semaglutide sometimes arrived at Lewis Family Care packaged in a vial that contained a warning that the drugs were intended for lab research and development only. The labels on the vials failed to provide adequate directions for use and adequate warnings, failed to contain an expiration date supported by stability studies, and failed to list the name and quantity of its active and inactive ingredients. The non-FDA approved semaglutide was separately stored in the Defendant's office away from Lewis Family Care's other legally obtained medications.

(f) On Fridays, patients visited Lewis Family Care's weight loss clinic, where they

were administered the semaglutide. Patients were unaware that the semaglutide was not FDA approved. In total, Lewis Family Care's weight loss clinic earned $249,044.40 from the administration of the semaglutide.

5. The statutory punishment for Count 1 is imprisonment for not more than 3 years, a fine of not more than $250,000, and a term of supervised release of not more than 1 year. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

6. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2023, manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the purchase, storage, and distribution of misbranded semaglutide from in or about May 2023 through on or about February 29, 2024.

(c) Pursuant to U.S.S.G. § 2B1.1(a), the base offense level is 6.

(d) Pursuant to U.S.S.G. § 2B1.1(b)(1)(F), increase the offense level by 10 levels for a loss amount over $150,000 but under $250,000.

(e) Pursuant to U.S.S.G. § 3B1.3, increase the offense level by 2 levels due to the use of a special skill.

(f) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

(g) Pursuant to U.S.S.G. § 4C1.1, if the Defendant is a qualified zero-point offender, decrease the offense level by 2 levels.

3

7. No agreement exists about the Defendant's criminal history category pursuant to

U.S.S.G. Chapter 4.

8. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

9. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range as recommended by the parties in this plea agreement. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

10. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the misbranded drugs seized as part of the criminal investigation. The Defendant agrees that this property is subject to forfeiture because a nexus exists between it and the offenses to which he is pleading guilty, pursuant to 21 U.S.C. § 334 and 28 U.S.C. § 2461. The Defendant also consents to the imposition of a forfeiture money judgment, pursuant to 21 U.S.C. §§ 334 and 853(p) and 28 U.S.C. § 2461, in the amount of $249,044.40, which represents the amount of proceeds that the Defendant obtained in exchange for misbranded drugs and, in turn, the value of the misbranded drugs that he received, sold, and/or dispensed in

4

violation of 21 U.S.C. §§ 331(c), 333(a)(2), and 352(a), (o), and (f) and that are unavailable for forfeiture as a result of the acts and/or omissions of the Defendant. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees to take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified here, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted. If the Defendant fails to pay in full the forfeiture money judgment, he consents to the forfeiture of any other property of his up to the amount of the forfeiture money judgment, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

11. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another

5

provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

12. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding
$1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial

Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

13. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any

time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

14. By no later than ten days prior to sentencing, the Defendant agrees to pay $249,044.40, by certified check or money order made payable to the "Clerk, U.S. District Court," to be deposited into the Court registry until the date of sentencing and, thereafter, to be applied to satisfy the financial obligations of the Defendant, pursuant to the judgment of the Court.

15. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

16. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

17. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

18. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

8

PAUL C. McCAFFREY
ACTING UNITED STATES ATTORNEY

Date: 2/26/2025   By: *[signature]*
Brittany Dunn-Pirio
Assistant United States Attorney

Date: 3/3/2025   *[signature]*
Matthew Tyler Lewis
Defendant

Date: 3/10/25   *[signature]*
Brandon Marshall
Attorney for Defendant